UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BOULET REHABILITATION SERVICES INC** | **CASE NO. 6:21-CV-00642** |
| **VERSUS** | **JUDGE JUNEAU** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## REPORT AND RECOMMENDATION

Before the Court is a motion to dismiss filed by defendant State Farm Fire & Casualty Co ("Defendant" or "State Farm"). (Rec. Doc. 12). Plaintiff Boulet Rehabilitation Services, Inc. ("Plaintiff" or "Boulet") opposed the motion (Rec. Doc. 18). The motion is fully briefed and properly before the Court for review. (Rec. Docs. The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that the motions before the Court be GRANTED.

## Factual Background

Plaintiff is a Louisiana limited liability company located in Lafayette, Louisiana. (Rec. Doc. 1 at ¶ 1). Plaintiff, a chiropractic office, purchased an all-

risk commercial insurance policy ("Policy") from State Farm with an applicable term of July 8, 2019 to July 8, 2020. (Rec. Doc. 12-2 at p. 2).[1]

In response to the COVID-19 global pandemic, Louisiana's Governor John Bel Edwards, having declared a public health emergency, issued a series of executive orders aimed at reducing COVID-19 infections within the state. One such executive order, 25 JBE 2020,[2] March 11, 2020, cited by Plaintiffs, resulted in the temporary closure of Plaintiff's business. (Rec. Doc. 1 at ¶¶ 7-9).

Plaintiff filed a claim[3] under the Policy, asserting loss of business income due to Governor Edwards' executive order. State Farm denied Plaintiff's claim on or about May 1, 2020. (*Id.* at ¶ 12). Plaintiff filed suit in this court seeking injunctive, declaratory and compensatory relief. (*Id.*, at pp. 18-19).

State Farm's instant motion seeks dismissal of all claims by Boulet in this case based on jurisprudence suggesting that Boulet's coverage claims and related requested relief are not viable under applicable law. (Rec. Doc. 12).

## Law and Analysis

A federal court sitting in diversity applies federal procedural rules and the forum state's substantive law. *Gasparini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996) citing *Eerie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

---

[1] Policy 98-BX-M103-9 at Rec. Doc. 12-2.
[2] https://gov.louisiana.gov/assets/Proclamations/2020/75-JBE-2020-State-of-Emergency-COVID-19-Extension-to-June-26.pdf
[3] The precise date of Plaintiff's claim against the Policy is not alleged in Plaintiff's Complaint. *See*, Rec. Doc. 1 at ¶ 12.

2

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir.2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir.2011), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In this case, the Court notes the Policy at issue is referenced in Boulet's complaint and is, in fact, central to Boulet's claims in this matter. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal

conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Louisiana's substantive law regarding the interpretation of insurance contracts was summarized by the Fifth Circuit Court of Appeal as follows:

> "Under Louisiana law, insurance policies are contracts between the parties and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *Pioneer Expl.*, 767 F.3d at 512 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)). "When interpreting a contract, the court must discern the parties' common intent." *Id.* "The parties' intent as reflected by the words in the policy determine[s] the extent of coverage." *Id.* (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)) (alteration in original). "Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." *Id.* (citing La. Civ. Code art. 2046). "'[W]ords of a contract must be given their generally prevailing meaning,' but '[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.'" *Id.* (quoting La. Civ. Code art. 2047) (alterations in

4

original). "Each provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Pioneer Expl.*, 767 F.3d at 512 (quoting *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1183 (La. 1994)). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.* (quoting *Cadwallader*, 848 So.2d at 580).

"If the insurance contract terms are ambiguous, these ambiguities are generally strictly construed against the insurer and in favor of coverage." *Id.* (citing *La. Ins. Guar. Ass'n*, 630 So.2d at 764). "This rule of strict construction 'applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.'" *Id.* (quoting *Cadwallader*, 848 So.2d at 580). *Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 713 (5th Cir. 2017).

Employing these standards, the Court will now consider whether Plaintiff's complaint states a claim for relief that is plausible on its face.

Plaintiff alleges coverage under a variety of Policy provisions. The Court will address each in turn.

***Loss of Income and Extra Expense Coverage***

The Policy states, in pertinent part:

Endorsement CMP-4705.2

    Loss of Income and Extra Expense

    COVERAGES

    1.    Loss of Income

    a.    We will pay for the actual "Loss of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause of Loss… (Rec. Doc. 12-2 at p. 70).

A number of district courts within the Fifth Circuit have ruled that, even when not defined within a policy, "direct physical loss to property" did not occur in cases where premises were rendered shuttered by either the actual presence of COVID-19 virus on the premises, or closure resulting strictly from executive order. See, *e.g. St. Pierre v. Transportation Ins. Co.*, No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. April 29, 2021); *Lafayette Bone & Joint Clinic, Inc., v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 17040466, at * 3 (W.D. La. May 3, 2021); *Muriels v. State Farm*, No. 6:20-CV-02295, 2021 WL 4290724 (E.D. La. April 26, 2021).

A "Covered Cause of Loss" is defined within the policy as arising from "accidental direct physical loss to" Covered Property, which loss is not excluded in "SECTION I – EXCLUSIONS" of the Policy. (Endorsement CMP-4705.2 at Rec. Doc. 12-2 at p. 70).

Within the Policy's "SECTION I – EXCLUSIONS" section is a Virus Exclusion, which provides, *inter alia*:

> SECTION I – EXCLUSIONS
>
> 1.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of any combination of these:
>
> \*                  \*                  \*
>
> j. Fungi, Virus or Bacteria
>
> (2)  Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease…"

(Policy at p. 6).

This Court agrees with State Farm's contention that the above-cited language acts as a bar to coverage of Boulet's claims. In *Muriel's New Orleans, LLC v. State Farm*, the Eastern District of Louisiana court considered the precise language at

issue here and, like the vast majority of courts to issue rulings on this issue,[4] found that the Virus Exclusion found within the Policy clearly and unequivocally excludes coverage for loss of business income claims resulting from the executive orders issued by Gov. John Bel Edwards in response to the COVID-19 pandemic. 2021 WL 1614812 (E.D. La. April 26, 2021). Addressing the identical argument made by Boulet regarding the Virus Exclusion, the *Muriel's* court reasoned that the plain language of the exclusion operates to exclude coverage when, as here, "occurs as a result" of a "virus, bacteria, or other microorganism[.]" This Court agrees with the *Muriel's* court regarding the applicability of the Virus Exclusion to Governor Edwards' executive orders. Such executive orders were necessitated by the COVID-19 pandemic and would not have been enacted absent the viral outbreak. Thus, under the plain language employed in the Anti-Concurrent Causes Clause ("ACC Clause"), losses attributable to the Governor's executive stay-home orders are excluded based on their causal relation to the COVID-19 virus.

Similarly, this Court agrees with the conclusion reached in *Muriel's* that claims such as those advanced by Boulet do not allege requisite "direct physical loss" under the Policy's "Loss of Income" endorsement as that term has come to be understood through applicable jurisprudence. (*Muriel's*, 2021 WL at *7). In a recent case involving nearly identical claims and policy provisions, this Court, speaking

---

[4] See, e.g., *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 2021 WL 1600247 (E.D. La. April 23, 2021); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F.Supp. 3d 353 (W.D. Tex. 2020).

through Judge Cain, found "no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss, or in its implications for coverage in this matter." (*Lafayette Bone & Joint Clinic, Inc. v. Transportation Insurance Co.*, No. 6:21-CV-00317 at *3 (W.D. La. May 3, 2021)). We find that this view comports with prior Fifth Circuit cases, in which the appellate court described actual physical changes to property as a threshold event for coverage purposes. *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x. 465, 470 (5th Cir. 2006) (applying the ordinary definition of the term "physical" to conclude that the policy language at issue excluded "intangible or incorporeal" losses amounting to "detrimental economic impact"); *Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (policy language at issue required proof of "an initial satisfactory state that was changed by some external event into an unsatisfactory state").

This Court rejects Boulet's argument that State Farm's decision not to include an available "Communicable Disease Exclusion" in the Policy, which it argues would unequivocally bar coverage for a global pandemic like COVID-19, should be interpreted strictly against the insurer as the author of the Policy. (Rec. Doc. 18 at pp. 11-12). This Court makes no finding regarding the potential applicability of the Communicable Disease Exclusion in this case. Our focus is, instead, the language actually included within the insurance contract which, as above, we find operates to

9

require actual physical damage to property and to exclude losses that would not have been sustained absent the advent of a "virus, bacteria or other microorganism[.]"

This Court further agrees that the civil authority provision of the Policy does not apply to Boulet's claims. In order to state a claim for loss of business income under the civil authority provision of the Policy under Louisiana law, Boulet must show: (1) a loss of business income cause by an action of civil authority; (2) that the action of civil authority prohibited access to the described insured premises; (3) that the action of the civil authority prohibiting access to the described insured premises was caused by direct physical loss or damage to property other than the described insured premises; and (4) the direct physical loss or damage to property other than the insured premises must be caused by a covered cause of loss as set forth in the policy. *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) citing *Kean, Miller, Hawthorne, D'Armond, McCowan, & Jarman, LLP v. National Fire Ins. Co. of Hartford*, 2007 WL 2489711 *3 (M.D. La. August 29, 2007). Boulet's claims before this Court do not meet this standard. Boulet neither alleges covered loss or damage to any nearby property, nor that such covered loss or damage resulted in action by a civil authority resulting in its restricted access to its property. Indeed Boulet does not assert that it was prevented from accessing its insured premises, but rather that it was prevented from operating its for-profit business for a period of time. Accordingly, Boulet fails to state a claim for coverage under the civil authority provision.

Finally, we decline to deny State Farm's motion as to the "Ordinance or Law," "Acts or Decisions," or "Consequential Loss" exclusions of the Policy. Under Louisiana law, an insured bears the initial burden of proving coverage exists under the terms of the Policy. Once done, the burden shifts to the insurer to demonstrate the applicability of some claimed exclusion. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 358 quoting *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). In this case, as explained above, Boulet fails to establish the existence of coverage for its claims under the terms of the Policy, owing mostly to the central issue of "accidental direct physical loss to" Covered Property.

Given the foregoing analysis, this Court will recommend the dismissal of Plaintiff's coverage claims under the Policy and will likewise recommend dismissal of Plaintiff's related declaratory and injunctive relief claims in this suit.

## **Conclusion**

For the reasons discussed herein, the Court recommends that State Farm's motion to dismiss be GRANTED and, accordingly, that all claims by plaintiff Boulet be DENIED and DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), superseded by statute on other grounds, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 20th day of October, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE